## Irma C. Pollack LLC v OP Dev. Corp.

2025 NY Slip Op 30083(U)

January 8, 2025

Supreme Court, New York County

Docket Number: Index No. 155868/2019

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. ANDREA MASLEY

*Justice*

PART     48

-----------------------------------------------------------------------------X

IRMA C. POLLACK LLC,

                                        Plaintiff,

- v -

OP DEVELOPMENT CORP., BENENSON CAPITAL
PARTNERS, LLC, S&S CADILLAC MOTORS CORP., and
KRISTAL CHEVROLET MOTORS CORP.,

                                        Defendants.

-----------------------------------------------------------------------------X

INDEX NO.     155868/2019

MOTION DATE     

MOTION SEQ. NO.     004

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 174

were read on this motion to/for                     JUDGMENT - SUMMARY                     .

This is an action for property damage.  Plaintiff Irma C. Pollack, LLC owned real property in Brooklyn, New York (Property) and alleges that defendants contaminated the Property with hazardous substances from their auto dealerships.  Defendant S&S Cadillac Motors Corp. n/k/a Kristal Auto Mall Corp. (Kristal) moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint.  Kristal contends that the remaining claims are barred by the statute of limitations and a 2017 stipulation declaring all prior leases and subleases null and void.

**Background**

Kristal asserts that in 1968, a 1959 ground lease (Ground Lease) was assigned to defendant OP Development Corp.[1] (OP) (NYSCEF 6) pursuant to which OP took

---

[1] Defendant OP filed for bankruptcy.  (NYSCEF 99, Notice of Bankruptcy.)  Defendant Benenson was dismissed.  (*Irma C. Pollack LLC v Op Dev. Corp.*, 2022 NY Slip Op

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No. 004**

Page 1 of 19

possession of the Property while plaintiff was the owner of the Property.[2] (NYSCEF 124, Bical[3] aff ¶ 3; NYSCEF 6, Ground Lease; NYSCEF 120, assignment to OP.) OP installed an underground waste storage tank, a trench drain system that collected waste oil and deposited it to the tank, two other underground tanks to store hydraulic fuel and motor oil, and constructed buildings for an automobile dealership and repair shop. (NYSCEF 114, tr at 17:10-16, 18:25-19:3 [Pollack depo]; NYSCEF 128, BCP Application.)

In the assignment, OP promised to abide by the terms of the Ground Lease. (NYSCEF 120, Assignment at 1-2.) The Ground Lease provides that OP: "keep [the Property] in good and first-class order and condition. . . and . . . make any and all repairs, replacements and renewals, ordinary or extraordinary, foreseen or unforeseen, structural or otherwise, necessary for such purpose." (NYSCEF 6, Ground Lease, Art. 5.) The Ground Lease provides that any assignee of the Ground Lease will have joint and several liability. (NYSCEF 120, Ground Lease Art. 34.)

OP subleased the Property to GM. (NYSCEF 124, Bical aff ¶¶ 5, 14.) On November 1, 1986, Kristal[4] took possession of the Property pursuant to a sub-sublease

---

31541[U], *6 [Sup Ct, NY County 2022]; NYSCEF 79, Decision.) Defendant Kristal Chevrolet is not a movant and, it is undisputed that it was dissolved in 1996. (NYSCEF 125, NY Secretary of State Entity Information [ineffective date: June 26, 1996]; NYSCEF 167, Plaintiff's Response to the Statement of Facts ¶ 9.)

[2] Plaintiff inherited the Ground Lease from the prior owner. (NYSCEF 124, Bical aff ¶ 3.)

[3] Sammy Bical owned Kristal since 1992. (NYSCEF 124, Bical aff ¶¶ 8, 9, 12.)

[4] Kristal incorporated and began operating the Property in 1992. (NYSCEF 124, Bical aff ¶ 9.) Prior to that it was known as S&S Cadillac Motor Corp. (*Id*.)

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**          **Page 2 of 19**
  **Motion No. 004**

2 of 19

[* 2]

with GM which was extended several times.  (NYSCEF 146, Sublease between GM and Kristal and nonparty Kristal Cadillac Inc.;[5] NYSCEF 148, Extension Requests.)

On May 1, 2005, OP subleased the Property to Kristal and Kristal Chevrolet (Sublease).  (NYSCEF 7, Sublease.)  The Sublease required Kristal to leave the buildings, structures, and equipment on the Property in "good order and condition," to comply with the terms of the Ground Lease, which included the obligation to keep the Premises in "good and first-class order and condition," comply with applicable law and regulations, "repair, replace, rebuild, and restore" damage caused to the Property "within a reasonable time," and not use the premises in any way that violates any "present or future . . laws, rules, regulations, ordinances or requirements."  (*Id.* Art. 5, 6, 7, 9, 11, 32.)  Kristal agreed to indemnification and to comply with the ground lease, that "[t]he obligations of each of the parties comprising Lessee hereunder shall be joint and several."  (*Id.* Art. 5, 15, 40.)

In 2007, OP retained Testwell Laboratories (Testwell) to test the Property for contaminants.  (NYSCEF126, Testwell Report.)  Testwell discovered that the soil and groundwater were contaminated by petroleum, chlorinated solvents, and semi-volatile organic chemicals, and that the contamination was associated with the trench drain system and a leaking subsurface waste oil tank.  (*Id.*; NYSCEF 156, Testwell Additional Remedial Report; NYSCEF 157, Testwell Proposed RAWP.)  Testwell reported the results to the New York State Department of Environmental Conservation (DEC). (NYSCEF 124, Bical ¶ 18.)

---

[5] Defendant Kristal Cadillac Inc.'s corporate certificate lists its name as Kristal Cadillac Corporation.  (NYSCEF 147, Secretary of State Entity Information.)

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**               **Page 3 of 19**
  **Motion No.  004**

3 of 19

[* 3]

INDEX NO. 155868/2019

RECEIVED NYSCEF: 01/08/2025

"Immediately upon learning about" the test results, Kristal installed new aboveground storage tanks and a new waste oil system that did not rely on the old trench drains. (NYSCEF 124, Bical aff ¶ 19). At DEC's direction, Kristal decommissioned the underground storage tanks. (*Id.* ¶ 20.)

Plaintiff and Kristal agreed to terminate the Sublease as of August 7, 2008, and "any and all prior agreements, if any, relating to Respondents' occupancy of the Premises, whether oral or written, are hereby rendered null and void, terminated and without any legal force and effect" (Standstill Agreement).[6] (NYSCEF 25, Holdover Petition, Exhibit 20, August 8, 2008 Stand-Still Agreement at 20/24.[7]) Under the Standstill Agreement, Kristal was to comply with its obligations under the Sublease going forward, for the duration of the Standstill Agreement to September 30, 2008. (*Id.* ¶ 3.)

The Sublease and the Ground Lease expired on August 31, 2008, after which OP and Kristal held over. (NYSCEF 6, Ground Lease, Renewal Art 29 at 47/60[8].) On November 14, 2008, plaintiff brought an eviction proceeding against them based on the Standstill Agreement. (NYSCEF 25, Holdover Petition.) In December 2008, the Civil Court of the City of New York, Kings County, found OP and Kristal liable as tenant and subtenant for holding over and for use and occupancy.[9] (NYSCEF 124, Bical aff ¶ 26.)

---

[6] The Standstill Agreement is executed by Kristal only. However, plaintiff relied on the Standstill Agreement in its Holdover Petition against Kristal, complaining that OP refused to execute it. (NYSCEF 25, Holdover Petition ¶ 10.)

[7] NYSCEF pagination.

[8] NYSCEF pagination.

[9] Judge Silver's decision is not filed in NYSCEF. (See NYSCEF 78, May 11, 2022 Decision at 13/27.)

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**          **Page 4 of 19**
**Motion No.  004**

In December 2011, plaintiff applied to enter the Property into the New York State Brownfields Cleanup Program (BCP) (Environmental Conservation Law § 27-1401, *et seq*). (NYSCEF 128, BCP application; NYSCEF 163, April 2012 Pollack and BCP agreement.)  Bical opines that this meant that plaintiff would be taking responsibility for remediation in exchange for significant tax credits.  (NYSCEF 124, Bical aff ¶ 30.)

In June 2017, plaintiff and Kristal settled the holdover action (Stipulation), providing that Kristal would pay use and occupancy, that it was an occupant of the premises subject to the terms of the Stipulation and not a tenant, and that it would vacate by November 30, 2017.  (NYSCEF 130, Stipulation of Settlement and Surrender ¶¶ 7, 10, 12.)  Under paragraph 5 of the Stipulation, "[E]xcept as provided otherwise in this Stipulation, any and all prior agreements, if any, relating to [OP's and Kristal's] occupancy of the Premises, whether oral or written, are hereby rendered null and void, terminated and without any legal force and effect."  (*Id.* ¶ 5)  Paragraph 6(c) provides that "any lease, sublease, license, sublicense, statutory or common law tenancy or occupancy rights in existence pursuant to which Respondents were occupants, tenants and/or licensees, and all other rights, if any, of possession or occupancy by the Respondents of the Premises, have terminated as of the date of execution of this Stipulation, subject to the terms and conditions of this Stipulation."  (*Id.* ¶ 6[c])

Paragraph 11 of the Stipulation provides:

> "Except as otherwise provided herein, Respondents shall occupy the Premises in the same manner as the Premises were occupied prior to this Stipulation and in full compliance with all laws and the terms of a certain terminated sublease, dated May 1, 2005 (the "Sublease") between Respondents, as sublessees, and non-party OP Development Corp., as sublessor.  Petitioner and Respondents shall abide by all the terms of the Sublease as if it were in effect between the parties with Petitioner, as sublessor including, but not limited to, the obligation to maintain, insurance and pay any and all premiums, pay any and all real estate

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 5 of 19**

5 of 19

[* 5]

property taxes as they become due and maintain the premises in the condition required thereunder." (*Id.* ¶11)

As a result, Kristal became a month-to-month tenant without a lease and paying rent directly to plaintiff. (NYSCEF 124, Bical aff ¶¶ 34, 38). The vacate date was extended several times, and OP and Kristal vacated the Property on March 31, 2018.[10] (*Id.*)

In 2017, plaintiff agreed to sell the Property for $16 million with the purchaser agreeing to remediate the Property if plaintiff delivered the Property without any tenants and without altering the Property. (NYSCEF 129, 2017 Purchase and Sale Agreement [PSA].) On October 2017, the prospective purchaser requested a seven days' extension under the 2017 PSA. Peter Pollack, responded, "No extension. October 24 Yes or No!!," which caused the 2017 PSA to be terminated. (NYSCEF 114, tr at 60:2-4 [Pollack Depo]; NYSCEF 117, Pollack Email.) The prospective purchaser did not cancel the 2017 PSA "because of the Contamination" as plaintiff alleges. (NYSCEF 5, Complaint ¶ 51.) Plaintiff seeks damages based on this failed transaction.

Kristal asserts that it returned the Property on March 31, 2018 in the same condition as existed at the execution of the Stipulation, both as to the subsurface contamination and the condition of structures. (NYSCEF 124, Bical aff ¶ 48; NYSCEF 122, Burke Report at 7.)[11]

On June 5, 2018, plaintiff sold the Property to the current owner for $9.2 million (2018 PSA). (NYSCEF 131, 2018 PSA.) The current owner agreed to "be solely

---

[10] Bical states that Kristal vacated on both April 18, 2018 and March 31, 2018. (NYSCEF 124, Bical aff ¶¶ 48, 51.) The court uses March 31, 2018 consistent with plaintiff's allegation in the verified complaint. (NYSCEF 5, Complaint ¶¶ 3, 24, 32, 58.)
[11] Michael Burke, PG, CHMM is a geologist who has worked for 25 years in remediation of sites impacted by petroleum and other contaminants and BCP sites. (NYSCEF 122, Burke Report.)

**155868/2019 IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.** **Page 6 of 19**
**Motion No. 004**

6 of 19

[* 6]

responsible for compliance with" the BCP remediation plan, and plaintiff promised not to "materially alter" the Property. (NYSCEF 131, 2018 PSA ¶¶ 27.6, 10.3.7.) Bical opines that the reason for plaintiff's promise not to materially alter was to prevent a decrease in tax credits accruing to the buyer. (NYSCEF 124, Bical aff ¶ 30.) The current owner completed remediation pursuant to the BCP and received over $9.7 million in tax credits. (NYSCEF 124, Bical aff ¶ 52.) Plaintiff also paid for remediation and received tax credits. (NYSCEF 128, BCP Application.) BCP tax credits are treated as an overpayment of taxes and as taxable gross income, so "the tax credits essentially paid for the Property." (NYSCEF 122, Burke aff ¶¶ 9, 13.)

The Complaint

Plaintiff seeks to recover the costs of the remediation and for the diminution in the value of the Property. (NYSCEF 5, Complaint.) The causes of action are: (1) breach of contract (¶¶ 54-62), (2) indemnification (¶¶ 63-65), (3) Navigation Law (Navigation Law § 170 *et. seq.*) liability (¶¶ 66-69), and (4) trespass (¶¶ 70-73). Plaintiff alleges that the Property was not polluted when the ground lease commenced, but that defendants contaminated it. Plaintiff alleges contamination by three pollutants: chlorinated solvent, petroleum and volatile organic compounds. (*Id.* ¶ 30.) Plaintiff asserts three breaches of the Ground Lease and Sublease: (1) a failure to remediate prior to vacating the Property; (2) a failure to investigate the contamination; and (3) a failure to remediate while in possession of the Property. (*Irma C. Pollack LLC v Op Dev. Corp.*, 2022 NY Slip Op 31541[U], *6 [Sup Ct, NY County 2022]; NYSCEF 79, Decision.) With regard to the contract, trespass, and indemnification claims, plaintiff seeks the following damages: (1) "diminution in value of the Property because of the

155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.
Motion No. 004

Page 7 of 19

[* 7]

Contamination"; (2) costs incurred (i) for "entering the Property into the New York State Brownfield Cleanup Program," (ii) to "investigate and delineate the nature and extent of the Contamination, including doing so to comply with the requirements of the BCP," (iii) to "prepare and implement a plan of interim remediation of the Contamination as required by DEC," and (iv) to "otherwise comply with the requirements imposed by DEC and BCP;" (3) "attorneys' fees and costs;" and (4) "pre-judgment interest."   (NYSCEF 5, Complaint ¶ 5.)  As to the Navigation Law claim, plaintiff seeks statutory damages for investigation, clean-up and removal, remediation, and diminution.  (*Id.* ¶¶ 68, 69.)  The Standstill Agreement and Stipulation are not mentioned in the complaint.  Rather the breach of contract is limited to breach of the Ground Lease and Sublease.

On May 11, 2022, the Court dismissed plaintiff's third cause of action for violation of the Navigation Law to the extent it seeks recovery for diminution in the Property's value; this claim survived as to diminution caused by chlorinated solvents and remediation costs.  The fourth cause of action for trespass by volatile organic chemicals and petroleum was also dismissed on statute of limitations grounds.  (NYSCEF 79, Decision.)   However, the issue of when the chlorinated solvents were discovered could not be resolved at the CPLR 3211 stage.  (*Id.*)  Plaintiff's 2008 notice of default, on which the court relied, did not mention chlorinated solvents.  (*Id.*, 2022 NY Slip Op 31541[U], *10.)   Accordingly, the trespass claim based on chlorinated solvents survived.  The court denied the motion to dismiss the contract claims as barred by the statute of limitations because the court found that the issue of whether 214 ( c ) (2) applied to the contract claims was not properly before the court.

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

Page 8 of 19

8 of 19

**Analysis**

On a motion for summary judgment, the moving party must affirmatively demonstrate the merit of its claim or defense, rather than merely pointing to gaps in the opposing party's proof. (*Bryan v 250 Church Assocs., LLC*, 60 AD3d 578, 578 [1st Dept 2009].) Where a movant fails to demonstrate its right to summary judgment, the motion will be denied, regardless of the sufficiency of the opposing papers. (*Cugini v System Lumber Co.*, 111 AD2d 114, 115 [1st Dept 1985].)

As a procedural matter, the court rejects Kristal various arguments for dismissal because plaintiff fails to offer any evidence of contamination by Kristal or as to the value of the Property when the November 27, 1959 Ground Lease and May 1, 2005 Sublease commenced. Plaintiff's lack of proof is not a reason to grant Kristal's motion for summary judgment. Rather, on a summary judgment motion, the moving party must first meet its burden of proof. (*Liberty Taxi Mgt., Inc. v Gincherman*, 32 AD3d 276, 278 n [1st Dept 2006]). As discussed below, the court finds that Kristal has done so.

Plaintiff's response to Kristal's statement of material facts, alone, is inadequate to counter Kristal's overwhelming evidence or to raise an issue of fact.[12] (NYSCEF 167, Plaintiff's February 16, 2024 Response to Kristal's Statement of Facts.) There is no memo of law responding to Kristal's legal arguments or tying together the rebuttal affidavit of Charles J. McGucken, plaintiff's environmental engineer, or explaining the context for the documents plaintiff offers. There is no affidavit from a person with knowledge opposing Kristal's fact affidavit from Bical.

---

[12] The court notes that plaintiff's response to Kristal's statement of material facts (NYSCEF 167) contains hyperlinks that do not work and citations that are wrong, e.g. NYSCEF 1 is a Summons with Notice, not a ground lease.

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 9 of 19**

Plaintiff has no excuse for such failure. Plaintiff had notice of the deadline for summary judgment since June 22, 2022. (NYSCEF 88, PC Order.) Kristal filed this motion on December 1, 2023. (NYSCEF 112, Notice of Motion.) Plaintiff requested and received numerous extensions of time on consent and later by court order, and still was not able to submit proper opposition.[13]

Plaintiff cannot fix its briefing failure by springing new arguments on Kristal and the court at argument. For example, the court rejects plaintiff's procedural argument based on 3211(a)(5) which was raised for the first time at argument; "3211," "stipulation," "release" or "statute of limitations" are not mentioned in plaintiff's response. (*See* NYSCEF 167, Plaintiff's Response to Kristal's Statement of Facts [argument is not mentioned].) Indeed, all of plaintiff's legal arguments raised for the first time at argument are rejected.

Trespass

The trespass claim is time-barred by CPLR 214-c (2). (*Pollack*, 2022 NY Slip Op 31541[U], *8). This action commenced in June 2019. Kristal alleges that plaintiff learned of the contamination in 2007. Except as to chlorinated solvents, the court previously found plaintiff to have knowledge from May 15, 2008, when plaintiff sent OP a notice of default that the property was contaminated. (*Id.*) However, chlorinated

---

[13] Kristal agreed to a 30-day adjournment. (NYSCEF 134, Stipulation.) However, Kristal finally objected to plaintiff's sixth adjournment request. (NYSCEF 136, Kristal's opposition to plaintiff's request for adjournment.) Plaintiff's excuses, though facially reasonable, became less so when viewed together. In all instances, plaintiff did not file late, but asked for yet another adjournment demonstrating no effort to get the work done. Plaintiff shall file in NYSCEF all his requests for adjournments whether they be by letter or email to the court or Kristal, if not already filed. These adjournments demonstrate to the court that plaintiff is in no hurry to resolve this matter; delay is an unacceptable litigation strategy.

155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.
Motion No.  004

Page 10 of 19

10 of 19

solvents were not mentioned in plaintiff's notice. (*Id.*) According to Kristal's expert, chlorinated solvents are a type of volatile organic chemical (VOC). ….". (NYSCEF 122, Burke Report at 5.) Plaintiff fails to counter Burke's opinion. Accordingly, plaintiff's reference to VOCs in the 2008 notice of default included chlorinated solvents. (NYSCEF 122, Burke Report at 5.) Testwell also identified all three types of contaminants and identified the leaking waste oil system as the source of contamination. (NYSCEF 122, Burke Report at 5; NYSCEF 126, April 27, 2007 Testwell Report.) Moreover, Roux advised plaintiff of the presence of chlorinated solvents in 2008. (NYSCEF 115, January 7, 2008 Roux Email.) Finally, plaintiff was clearly aware of the chlorinated solvent contamination by 2011, when plaintiff certified on its BCP application that the Property was contaminated with petroleum, SVOCs, and "chlorinated solvents." (NYSCEF 128, December 9, 2011 BCP Application at 4; NYSCEF 114, tr at 36:21-25; 37:2-5 [Pollack Depo].) Hence, the limitations period for CPLR 214-c ended in 2007, or 2011, at the latest, more than three years before this 2019 case began. Therefore, the fourth cause of action is dismissed.

Breach of Contract

Plaintiff's claims for breach of the Ground Lease and the Sublease are dismissed because those agreements expired in 2008 under the Standstill Agreement and June 2017 under the Stipulation, agreements between both plaintiff and Kristal. A party may not recover damages under an agreement declared null and void. (*Northville Industries Corp. v Ft. Neck Oil Terminals Corp.*, 100 AD2d 865, 867 ([2d Dept 1984] ["where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede…an old agreement, the subsequent agreement extinguishes the

**155868/2019  IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 11 of 19**

11 of 19

old one and the remedy for any breach thereof is to sue on the superseding agreement"], *affd* 64 NY2d 930 [1985]; *See also Citigifts, Inc. v Pechnik*, 112 AD2d 832 [1st Dept 1985], *affd,* 67 NY2d 774 [1986].) "Once an agreement has been rescinded, there can be no claims based on the cancelled agreement unless the right to make such claims is expressly or impliedly reserved within the terms of the rescission." (*Milan Music, Inc. v Emmel Communications Booking, Inc.*, 37 AD3d 206 [1st Dept 2007].)

Any breaches from 2008 to 2017 would be under the Standstill Agreement which incorporated the terms of the Sublease. The Standstill Agreement is not mentioned in the complaint. Any breaches from 2017 to March 31, 2018, when Kristal vacated, would be under the 2017 Stipulation, but it is not mentioned in the complaint.

However, plaintiff cannot assert a breach of the Sublease against Kristal since plaintiff is not a party to the Sublease between OP and Kristal. This third-party beneficiary theory is not mentioned in the complaint (*Suffolk Cnty. v Long Island Lighting Co.*, 728 F2d 52, 63 [2d Cir. 1984] [nonparty must be intended beneficiary of contract term to succeed on third-party beneficiary theory].) As OP's third-party beneficiary, plaintiff would have to prove the condition of the property when Kristal entered the Sublease, that Kristal contaminated the Property, and Kristal did not vacate the Property in 2005 condition. (*Diaz v Cunningham*, 68 Misc 3d 319, 323 [City Ct, Orange County 2020] ["the landlord must prove the tenant's occupancy caused damage"].) As discussed below, plaintiff fails to counter Kristal's proof and legal arguments. Plaintiff also fails to assert any relevant issue of fact.

Even if plaintiff could enforce the Stipulation which required Kristal to "maintain the premises in the condition required" and to keep and return the Property in "good and

**155868/2019  IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 12 of 19**

[* 12]

12 of 19

first-class order and condition" Kristal has established that it returned the property in the same 2017 condition.  (NYSCEF 7, Sublease, Article 5, 6, 7, 9, 11, 32.)  This covenant obligates a tenant to "return the property in as good state as received." (*Mahoney v Broadway Brewing & Malting Co.*, 157 Misc 430 [Sup Ct, Erie County 1907]; *Granger Univ. Ave. Corp. v First State Ins. Co.*, 99 AD2d 1022, 1023 [1st Dept 1984] [obligation to "return them at the end of the lease term in the same condition except for ordinary wear and tear"].)  Kristal returned the Property to plaintiff on March 31, 2018 in the same condition it was in when the parties entered into the Stipulation in 2017. (NYSCEF 124, Bical aff ¶¶ 48-49.)  Otherwise, plaintiff would have been in violation of its PSAs to sell the Property which required no changes to the Property to preserve the tax credits.  (NYSCEF 131, 2018 Purchase and Sale Agreement.)  The burden shifts to plaintiff who offers no evidence otherwise.  There is also no proof that plaintiff violated the PSA because Kristal modified the Property.

Even if the Ground Lease and Sublease were enforceable by plaintiff against Kristal, to prove breach of contract, plaintiff must establish that Kristal caused the contamination, which devalued the Property.  Bical blames the contamination on OP and the prior auto dealers onsite for 24 years before Kristal came on the scene as a sub-subtenant in 1992.  (NYSCEF 122, Bical aff ¶¶ 22, 25.)  In the complaint, plaintiff alleges that the Property became contaminated during OP's tenancy, which began in 1968.  (NYSCEF 5, Complaint ¶ 2.)  Burke opines that "[i]t is likely that the Contamination . . . existed prior to [Kristal's] operation at the Property."  (NYSCEF 122, Burke Report at 7-8.)  Kristal did not enter a lease with OP until 2005, and there were no environmental investigations conducted until 2007.  (NYSCEF 124, Bical aff ¶¶ 14,

**155868/2019  IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 13 of 19**

13 of 19

17-18.)  Thus, there is no evidence of the condition of the Property at the time the Sublease began, and no evidence to establish that Kristal contaminated the Property. Moreover, "there is no evidence that [Kristal's] use of the system increased the remedial costs."  (NYSCEF 122, Burke Report at 7.)

Plaintiff fails to raise an issue of fact as to whether the tanks leaked during Kristal's tenure.  In its response to Kristal's statement of facts, plaintiff relies on allegations in OP's action against GM.  (NYSCEF 170, March 3, 2008 Complaint.)  In the complaint, signed by OP's attorney, OP references a forensic analysis OP had performed which revealed pre-1985 gasoline and waste oil contamination connected to GM's leasehold and more recent contamination which implicates Kristal.  (*Id.*)  The complaint is not verified.  The court rejects plaintiff's footnote that the complaint proves the tanks leaked during Kristal's tenure, based on an attorneys' duty to investigate claims in a pleading and not assert frivolous arguments.  (NYSCEF 167, Plaintiff's Response to Kristal's Statement of Facts, n 5; 22 NYCRR 130-1a.)   The complaint is useless without the report disclosed therein.  The data is not in the complaint to support the assertions implicating Kristal and allegations in an unverified complaint are simply not sufficient.  Moreover, there was no motion for spoliation for failure to produce this earlier report.

Plaintiff cannot establish contract damages for two reasons.  First, plaintiff is not entitled to diminution damages.   Where a tenant covenants to return property in good condition, "the damages are what it would cost to put the premises in the required state of repair."  (*City of New York v Penn. R.R. Co.*, 37 NY2d 298, 301 [1975]; *Farrell Lines, Inc. v City of New York*, 30 NY2d 76, 84 [1972] ["when an action is brought by a landlord

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 14 of 19**

14 of 19

for breach of a covenant to keep in good repair after the expiration of the lease, the cost of accomplishing what should have been done measures the lessor's damages"].) "[T]he cost of repairing the injury will be the proper measure of damages, so long as the cost of restoring the land to its former condition is less than the diminution in the market value of the whole property by reason of the injury." (*Prashant Enterprises Inc. v State*, 228 AD2d 144, 147-48 [3d Dept 1996].)

Second, the unconsummated sale for $16 million is insufficient to establish damages. Even if plaintiff were entitled to the diminution in value, which it is not, there is no evidence in the record to support such a calculation. While the 2017 PSA is admissible to show the value of the Property when that contract was made in 2017, it is superseded by the 2018 contract that closed and the value of the Property from the start of Kristal's tenancy is absent. (*In re Searingtown Rd., Town of N. Hempstead, Nassau County*, 68 Misc 2d 405, 406 [Sup Ct, Nassau County 1971] ["Contracts of sale entered into in good faith are not only evidence of value, they are the value, at the time they are made… in the absence of any evidence tending to impeach the good faith of the transaction or show that the property was sacrificed, [the price] affords a fair indication of its value at the time the contract was made and *should be considered in arriving at its value when taken.*"].) Plaintiff, and thus Kristal, was prohibited from making any changes to the Property between 2017 and 2018 by plaintiff's PSAs and there is no allegation of a breach of the PSA for altering the property from 2017 to 2018. Moreover, the 2017 and 2018 contracts for $16 million and $9 million undermine plaintiff's theory that there was a diminution in value during Kristal's tenancy. There is no expert appraisal showing that the value of the Property was greater before.

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 15 of 19**

Finally, plaintiff's failure to offer a valuation expert is fatal to this claim. (§ 146:12 Experts, 4G N.Y. Prac., Com. Litig. in New York State Courts § 146:12 [5th ed.] ["Valuing real property always entails expert opinion"].)

Alternatively, the breach of contract claim is dismissed as barred by the statute of limitations discussed above with regard to trespass. (*Miller Realty Assoc. v Amendola*, 51 AD3d 987, 988-89 [2d Dept 2008] [applying CPLR 214-c to breach of contract for property damage due to contamination].)

Therefore, the first cause of action for breach of contract is dismissed.

Indemnification

Plaintiff asserts an indemnification claim for clean-up costs as a breach of the lease. (NYSCEF 5, Complaint ¶ 65.) This claim is barred by CPLR 214-c for remediation damages expended up to 2013 (=2019-6 years). Plaintiff also seeks reimbursement for cleanup costs that it paid since 2013 which is not barred by the statute of limitations. An action for indemnity or contribution accrues when the payment is made by the party seeking recovery. (*Tedesco v A.P. Green Industries, Inc.*, 8 NY3d 243, 247 [2007]). However, as discussed above, like the contract claim, the contractual indemnification claim must be dismissed for the same reasons.

Likewise, plaintiff's contractual claim for joint and several liability is dismissed for the same reasons.

Navigation Law

*Property Damage: Diminution in value*

This court dismissed plaintiff's claim to recover for diminution of property value as time-barred under CPLR 214-c (2). (*Pollack*, 2022 NY Slip Op 31541[U], *10.)

**155868/2019  IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No. 004**

**Page 16 of 19**

16 of 19

Likewise, the diminution of value must be dismissed as to chlorinated solvent contamination as time-barred for the same reasons that the trespass claim is.

*Reimbursement of Cleanup Costs:*

Plaintiff's remaining claim is for reimbursement for clean-up costs under the Navigation Law that plaintiff paid since 2013. (*State v Stewart's Ice Cream Co., Inc.,* 64 NY2d 83 [1984] [six-year statute of limitations].) Navigation Law § 181(1) states "[a]ny person who has discharged petroleum" to be strictly liable for costs of remediation, without regard to fault, and Navigation Law § 172(8) defines a "discharge" as "any intentional or unintentional action or omission resulting in" a petroleum spill. A plaintiff can maintain this Navigation Law claim, effectively one for a contribution or indemnification, even though the plaintiff is barred by the statute of limitations from bringing a direct action for the underlying wrong, if all the essential elements of a Navigation Law cause of action against the proposed contributor or indemnitor can be made out. (*Calcutti v SBU, Inc.*, 273 F Supp 2d 488, 497 [SD NY 2003]; *Scaccia v Wallin*, 121 AD2d 709, 710 [2d Dept 1986]). In this case, to recover cleanup costs, plaintiff must establish that Kristal reasonably knew that petroleum was present on the property and Kristal was responsible for its discharge. (*State of NY v Metro Resources, Inc.*, 14 AD3d 982, 983 [3d Dept 2005] ["An owner's claim for reimbursement under Navigation Law § 181 (5) requires proof that the other party 'actually caused or contributed to the discharge" to establish liability'" (citation omitted)].)

**155868/2019  IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 17 of 19**

[* 17]

17 of 19

As discussed above, Bical denies any discharge and blames GM.[14]  Plaintiff fails to offer any evidence to counter Bical to show that Kristal discharged petroleum.  As a result, there is neither a credibility issue nor an issue of fact.

Likewise, there is no evidence that Kristal failed to remediate.  Kristal lacked capacity to clean up prior to its tenancy with OP and after plaintiff entered the Property in the BCP.  (*C & J Cleaners v GACO Fashioned Furniture, Inc.*, 85 AD3d 1079 [2d Dept 2011] [summary judgment granted to tenant of adjacent building as they were neither dischargers nor had "capacity to take action to prevent the spill or to clean up the resulting contamination"]; NYSCEF 122, Burke Report ¶¶ 6, 9-11; NYSCEF 124, Bical aff ¶ 30-33; NYSCEF 114, Pollack Dep 34:7-11.)  Likewise, Kristal could not remediate after plaintiff executed the 2017 and 2018 PSAs which required no alterations to the Property to preserve the tax credits.  That leaves the period 2005, Kristal's sublease with OP, to 2011, when plaintiff entered the BCP.   The contamination was not discovered until 2007, and thus, there was nothing for Kristal to clean up.  In 2007, as directed by DEC, Kristal installed aboveground tanks and decommissioned the underground storage tanks.  From 2008 to 2018, Kristal was a month-to-month

---

[14] (NYSCEF 122, Bical aff ¶¶ 22, 25.)  In the complaint, plaintiff alleges that the Property became contaminated during OP's tenancy, which began in 1968. (NYSCEF 5, Complaint ¶ 2.)   Burke opines that "[i]t is likely that the Contamination . . . existed prior to [Kristal's] operation at the Property." (NYSCEF 122, Burke Report at 7-8.)  Kristal did not enter a lease with OP until 2005, and there were no environmental investigations conducted until 2007.  (NYSCEF 124, Bical aff ¶¶ 14, 17-18.)  Thus, there is no evidence of the condition of the Property at the time the Sublease began, and no evidence to establish that Kristal contaminated the Property.  Moreover, "there is no evidence that [Kristal's] use of the system increased the remedial costs." (NYSCEF 122, Burke Report at 7.)

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 18 of 19**

18 of 19

[* 18]

occupant with no tenancy rights, and thus, no capacity to perform remediation. Therefore, the Navigation Law claim is dismissed in its entirety.

The court has considered the parties' remaining arguments and finds them unavailing without merit or otherwise not requiring an alternate result.

Accordingly, it is

ORDERED that the motion for summary judgment by defendant S&S Cadillac Motors Corp. n/k/a Kristal Auto Mall Corp. is granted and the action is dismissed with costs and disbursements to defendant as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

20250108082315AMASLEY1FD22A7E412A4F949CF850C3D2BD69C3

| 1/8/2025 | | ANDREA MASLEY, J.S.C. |
| --- | --- | --- |
| **DATE** | | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | ☐ | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**155868/2019   IRMA C. POLLACK LLC vs. OP DEVELOPMENT CORP.**
**Motion No.  004**

**Page 19 of 19**

19 of 19